# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

Emily Baack,

    Plaintiff,

v.

Asurion, LLC.,

    Defendant.

Case No. 2:20-cv-00336-KJD-BNW

**ORDER**

    Before the Court is Defendant's motion to seal. ECF No. 32. Defendant moves to file exhibits D, G, N, O, Q, and R to its motion for summary judgment under seal. The sealed exhibits are filed at ECF No. 32. Defendant argues the exhibits constitute trade secrets that should be sealed under the Ninth Circuit's compelling reasons standard. *Id.* at 4.

    Plaintiff does not substantively oppose this request. ECF No. 37. As discussed in more detail below, the Court grants Defendant's motion to seal exhibits D, G, N, O, Q, and R.

**I.**      **Legal Standard**

    Generally, the public has a right to inspect and copy judicial records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Such records are presumptively publicly accessible. *Id.* Consequently, a party seeking to seal a judicial record bears the burden of overcoming this strong presumption. *Id.* In the case of dispositive motions, the party seeking to seal the record must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process. *Id.* at 1178–79. Courts cannot rely on hypothesis or conjecture. *Id.* at 1179.

    In general, compelling reasons sufficient to outweigh the public's interest in understanding the judicial process exist when court files might become "a vehicle for improper purposes." *Id.* Releasing trade secrets is an improper purpose. *Id.*

The Ninth Circuit has adopted the Restatement's definition of "trade secret." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1222 (Fed. Cir. 2013) (citing *Clark v. Bunker,* 453 F.2d 1006, 1009 (9th Cir. 1972)). Under this definition, a trade secret is "any formula, pattern, device or compilation, of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Bartech Int'l, Inc. v. Mobile Simple Sols., Inc.*, No. 215CV02422MMDNJK, 2016 WL 2593920, at *1 (D. Nev. May 5, 2016) (quoting Restatement (First) of Torts § 757, cmt. b (1939)). Although trade secrets generally relate to the production of goods, they may relate to other business operations. *Clark*, 453 F.2d at 1009.

The Restatement provides six factors to consider when determining whether information is a trade secret:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Restatement (First) of Torts § 757 cmt. b.

**II.     Analysis**

    **1. The Training Materials (at Exhibits D, G, Q, and R) Constitute Trade Secrets.**

The first issue addressed by the Court is whether Defendant's employee training materials (exhibits D, G, Q, and R) constitute trade secrets under the Restatement. *See id.* Defendant argues the exhibits are trade secrets because the records contain training information that is "uniquely tailored" to its policies, procedures, and coaching techniques. ECF No. 32 at 5. Defendant further argues the exhibits are a product of Asurion's significant efforts and resources. *Id.* at 6.

The Court considered the Restatement factors and agrees that exhibits D, G, Q, and R are trade secrets.

Regarding the first factor (the extent to which the information is known outside of his business), Defendant contends that "Asurion's employee training is not known to those outside of Asurion's employment." *Id.* at 4. Defendant's attorneys are officers of the Court and their arguments are cogent and uncontradicted. The Court has no reason to doubt their veracity.[1] Accordingly, this factor weighs in Defendant's favor.

Regarding the second factor (the extent to which it is known by employees and others involved in his business), Defendant argues the training materials are only "provided to employees when they begin working for Asurion and attend the three-week training course." *Id.* To support its statement, Defendant relies on Plaintiff's Deposition Transcript. ECF No. 41-1 at 34:8–25, 35:7–25, 36:3–37:11. This exhibit discusses Plaintiff's personal training experience at Asurion, like sitting in a conference room with twelve other people while reviewing PowerPoints. *Id.* at 35:23–36:2. Plaintiff's experience supports Defendant's statement that its training materials are limited to Asurion employees. This factor weighs in Defendant's favor.

Regarding the third factor (the extent of measures taken by him to guard the secrecy of the information), Defendant claims that it has taken "adequate protective measures" to keep its training materials secret because the materials are exclusive to Asurion employees.[2] ECF No. 41 at 4. This factor weighs in Defendant's favor.

Regarding the fourth factor (the value of the information to him and to his competitors), Defendant claims the training information is valuable to it and other companies. ECF No. 32 at 5. For example, exhibits D and R showcase interactive scenarios and roleplaying activities developed by Asurion employees based on real-life situations at the company. ECF No. 32-1 at 25, 29; ECF No. 32-6 at 9–10. And exhibit G outlines the steps an Asurion employee needs to take before issuing a corrective action. ECF No. 32-2 at 1–21. Exhibit Q uses unique questions and activities to guide employees through office procedures. ECF No. 32-5 at 6–11. Defendant claims all this information gives Asurion a competitive advantage over other companies.

---

[1] This Court will accept Defendant's statements as true throughout this order unless the Court finds such statements are contradicted.

[2] Defendant's employee handbook states that "it has always been Asurion's policy that Asurion's business information is strictly confidential." ECF No. 32-4 at 22.

Specifically, Defendant argues the training materials allow Asurion to retain existing and new clients. ECF No. 32 at 6. This factor weighs in Defendant's favor.

Regarding the fifth factor (the amount of effort or money expended by him in developing the information), Defendant claims the training materials are "the product of many hours, and many dollars, worth of work." *Id.* Specifically, Defendant states Asurion's efforts to tether "multiple situations into a thorough and interactive collection" help Asurion deal with supply chain issues and customer solutions. *Id.* at 5. Defendant argues such efforts cost the company valuable time and money. *Id.* at 6. This factor weighs in Defendant's favor.

Regarding the sixth factor (the ease or difficulty with which the information could be properly acquired or duplicated by others), Defendant contends that if the exhibits were made public, competitors could easily acquire and duplicate the materials. ECF No. 41 at 5. The Court interprets this factor differently than Defendant.

Defendant interprets this factor as asking it to assess the ease or difficulty with which the information could be properly acquired or duplicated by others *if the exhibits were unsealed.* The Court interprets this factor as meaning the ease or difficulty with which the information could be properly acquired or duplicated *by others generally in the world (independent of the motion to seal)*.

The Court interprets this factor in this manner for two reasons. First, if the factor were interpreted as Defendant seems to interpret it, this factor would always cut in favor of sealing and essentially be meaningless; any document that was unsealed could be acquired and duplicated by others. Second, the Restatement supports the Court's interpretation. It provides that trade secrets derive their value from being secret, and "a substantial element of secrecy must exist [for something to be a trade secret], so that, except by the use of improper means, there would be difficulty in acquiring the information." Restatement (First) of Torts § 757, cmt. b.

Here, Defendant does not explain how easy or difficult it would be for others to acquire or duplicate its sealed exhibits generally. Accordingly, this factor neither supports nor detracts from sealing the exhibits.

In sum, the Restatement factors support finding that exhibits D, G, Q, and R are trade secrets.

### 2. The Code of Conduct and Employee Handbook (at Exhibits O and N) Constitute Trade Secrets.

The second issue addressed by this Court is whether Defendant's code of conduct and employee handbook constitute trade secrets under the Restatement. *See* Restatement (First) of Torts § 757 cmt. b. Defendant argues exhibits O and N are trade secrets because they are "entitled to confidential status" and represents many hours and dollars' worth of work. ECF No. 32 at 6–7. Defendant further contends the exhibits aide Asurion's business success in a competitive and aggressive market. ECF No. 41 at 5.

The Court considered the Restatement factors and agrees that exhibits N and O are trade secrets.

Regarding the first factor (the extent to which the information is known outside of his business), Defendant contends that "Asurion's policies, procedures, or code of conduct are not public information." *Id.* Accordingly, this factor weighs in Defendant's favor.

Regarding the second factor (the extent to which it is known by employees and others involved in his business), Defendant argues that "[t]he only individuals privy to the materials in exhibits N and O are employees of Asurion." *Id.* For this reason, the factor weighs in Defendant's favor.[3]

Regarding the third factor (the extent of measures taken by him to guard the secrecy of the information), Defendant claims that it has taken measures to guard the secrecy of exhibits N and O by limiting access to those documents to Asurion employees. *Id.* at 5–6. Defendant argues this limited access keeps the records secret. Accordingly, this factor weighs in Defendant's favor.

Regarding the fourth factor (the value of the information to him and to his competitors), Defendant argues that exhibits N and O constitute Asurion's "how-to" guide. ECF No. 32 at 7.

---

[3] Defendant's employee handbook states that "it has always been Asurion's policy that Asurion's business information is strictly confidential." ECF No. 32 at Exhibit O 00022.

Defendant contends that if this "how-to" guide were obtained by competitors, it would disadvantage Asurion. *Id.* Exhibit N discusses how Asurion's ethical principles and standards should guide employee actions and business relations. ECF No. 32-3 at 4. Defendant claims employee compliance with this exhibit aids Asurion in offering competitive service rates and attracting and retaining clients. ECF No. 32 at 6.

Defendant further claims that exhibit O provides specific information about Asurion's policies as well as internal procedures on how to implement relevant law. ECF No. 32-4 at 30, 34–53. Defendant states that other competitors could receive the benefit of this handbook "without incurring the administrative and legal expense" of developing its own documents. ECF No. 32 at 7. In sum, Defendant argues exhibits N and O possess procedures and information that make Asurion competitive. This factor weighs in Defendant's favor.

Regarding the fifth factor (the amount of effort or money expended by him in developing the information), Defendant claims the training materials are "the product of many hours, and many dollars, worth of work." *Id.* at 6. Specifically, Defendant states exhibits N and O are the end-product of "[e]ndeavors to [t]ether [u]nique [i]nformation." ECF No. 41 at 6. Defendant argues Asurion invested time and money to create this end-product. *Id.* Accordingly, this factor weighs in Defendant's favor.

Regarding the sixth factor (the ease or difficulty with which the information could be properly acquired or duplicated by others), Defendant contends that if the exhibits were made public, competitors could easily copy the materials. *Id.* However, as stated previously, the Court interprets this factor differently than Defendant. Here, Defendant does not explain how easy or difficult it would be for others to acquire or duplicate its sealed exhibits independent of the motion to seal. Accordingly, this factor neither supports nor detracts from sealing the exhibits.

Altogether, the Restatement factors support finding that exhibits N and O are trade secrets.

### 3. Defendant Meets the Compelling Reasons Standard.

The third issue this Court addresses is whether Defendant meets the compelling reason standard. It does. Releasing trade secrets is a compelling reason sufficient to outweigh the right of public access. *Kamakana*, 447 F.3d at 1179. And the court has found that Defendant's exhibits

1 | constitute trade secrets. Therefore, Defendant meets the compelling reason standard and justifies
2 | sealing the exhibits.

### III. Motion to Seal ECF No. 32

Defendant filed this motion to seal under seal. ECF No. 32. If Defendant would like this document sealed, it must file a motion to seal by August 30, 2021 explaining, specifically, why good cause exists to seal the document. If no such motion is filed, the document will be unsealed.

### IV. Conclusion

The Court reviewed the documents at issue and finds that compelling reasons exist to seal them. These documents constitute trade secrets that could be used for an improper purpose if allowed to be in the public record. *Kamakana*, 447 F.3d at 1179. Accordingly, the Court will grant Defendant's motion to seal regarding exhibits D, G, N, O, Q, and R. ECF No. 32.

IT IS THEREFORE ORDERED that Defendant's motion to seal (ECF No. 32) is GRANTED.

Dated: July 22, 2021.

_____
Brenda Weksler
U.S. Magistrate Judge